## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MARY REELEY, TIMOTHY
REELEY, NOLAN REELEY, and
SUMMER REELEY,

     Plaintiffs,

                                    Case No. 3:20-cv-1408-BJD-LLL

v.

UNITED STATES OF AMERICA,

     Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court following bench trial of this case. The Court considered those matters submitted and argued at trial as well as the parties' competing proposed findings of fact and conclusions of law (Docs. 71 and 72). The Court considered the pleadings, examined the evidence, observed those witnesses called at trial, and weighed the entirety of the record in entering its findings of facts and conclusions of law consistent with Federal Rule of Civil Procedure 52.

## A.    Findings of Fact and Conclusions of Law

Plaintiff initiated this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 and §2671 et seq.[1] Plaintiff claims Dr. Concepcion and Dr. Dobbertien[2] worked for the Naval Hospital Jacksonville when their acts of negligence caused injury to Plaintiff, her husband, and her children. The Government denied Plaintiff's administrative tort claim and this suit followed.  The parties agree the United States is the proper Defendant in this case as Dr. Concepcion was employed by the United States and working within the scope of his employment during the time of Plaintiff's alleged injury. (Doc. 32 at 29). Further the parties agree Plaintiff exhausted her administrative remedies prior to suit and complied with all necessary conditions precedent. Id.

Plaintiff, Mary Reeley has been married to Timothy Reeley for nearly 32 years. Tr. 1:167. They share two children: Nolan, age 25 and Summer, age 23. Id. at 168. Plaintiff had a longstanding history of diabetes and difficulty managing her weight. Tr: 4:110. Plaintiff's medical notes reported a body mass index between 45 and 49.9, headache, heartburn, irritable bowel,

---

[1] The Court refers to Plaintiff and Mrs. Reeley interchangeably. The Court recognizes that Mrs. Reeley's husband and children are also Plaintiffs seeking damages for loss of consortium.

[2] For all practical purposes, the Court treats the actions of Dr. Concepcion as controlling for both Dr. Concepcion and Dr. Dobbertien, as Dr. Concepcion was the lead surgeon with ultimate say as to Plaintiff's treatment. Tr. 4:104.

migraines, hypertension, back pain, and the frequent need to urinate. (Doc. 59.1 at 11).

Dr. Eugenio Concepcion was a general surgeon credentialed to perform a gastric sleeve surgery. Tr. 4:107. Dr. Concepcion and Plaintiff decided that a gastric sleeve procedure was preferrable to a gastric bypass in assisting Plaintiff have a better quality of life. Tr. 4:113-14, and 118. Among other things, Dr. Concepcion explained risks associated with the sleeve surgery, including leak of anastomosis; injuries to other organs; sepsis; and complications along the staple line. Id. at 124.

Dr. Concepcion performed the sleeve surgery on Plaintiff at the Naval Hospital Jacksonville ("NHJ") on August 13, 2018. Tr. 4:124. He reported that at the time he believed there were no complications during the procedure. Id.at 147. His operative report reflected that "[o]nce the stomach was completely divided, Endo-scissors were used to divide the final tab of the reinforcement material." (Doc. 59.1 at 113). After the final cut, Dr. Concepcion noticed arterial bleeding which he controlled through "harmonic coagulation." Id.

Harmonic coagulation is induced through a harmonic scalpel, which is an instrument employing an oscillating blade that generates heat that allows one to separate, burn, and cauterize tissue safely. (Doc. Tr. 4:99-100). Dr. Concepcion did not regard the bleeding as significant and opined that

bleeding could be controlled with a harmonic scalpel, clips, or sutures. Id. at 140.

Following his work on the stomach, Dr. Concepcion closed Plaintiff's largest incision using a Carter-Thomason suture to reduce the odds of herniation. Id. at 144. Then Dr. Concepcion used an endoscope and inflated Plaintiff's stomach to check for bleeding and leakage—none was observed. Id. at 144-45; (Doc. 59.1 at 113). Dr. Concepcion sent Plaintiff to a recovery gurney and then the ICU for "step down admission." (Doc. 59.1 at 113). The following day, Plaintiff was given a post-operative leak test with barium contrast fluid and showed no signs of leakage. Id. at 305. However, Plaintiff's heart rate and white blood cell count were elevated indicating possible sepsis. Tr. 5:59.

Dr. Concepcion discharged Plaintiff from the hospital on August 15, 2018, after noting that Plaintiff showed no complications from surgery. (Doc. 59.1 at 327). At approximately 2:30 a.m. on August 16, 2018, Plaintiff returned to NHJ through the emergency room complaining of a "great deal" of stabbing and burning pain that was not relieved by medication. Id. at 393. Plaintiff's breathing was shallow and splintered owing to her discomfort. Id.

A CT scan revealed retained oral barium and a large air-filled pocket near the gastric pouch. (Doc. 59.1 at 438). The radiologist suspected a gastric

leak. Id.at 439. Both parties' experts and Dr. Concepcion agree there was a gastric leak. Tr. 2:28; Tr. 7:72.

After reviewing the post-operative notes and considering the events that followed, Doctor Gregory Schroder opined that Dr. Concepcion failed to completely divide the stomach. Tr. 2:20. Specifically, Dr. Schroder explained that when Dr. Concepcion stappled a portion of the stomach, it likely pushed the remaining tissue forward, including a portion of the stomach. Id. at 21. As the stomach was pushed forward, it was concealed by incision reinforcing material. Id. When Dr. Concepcion used the endo-scissors to remove it, arterial bleeding resulted. Id. Use of a harmonic scalpel to coagulate the bleeding only temporarily closed the leak site. Id. Dr. Schroder explained that Dr. Concepcion failed to account for the possibility of remaining stomach tissue and failed to adhere to the standard of care by using a second line of staples. Id. Dr. Schroder explained this error was compounded by Dr. Concepcion's used of a harmonic scalpel to coagulate stomach tissue because it damages the tissue which can reopen under continuing pressure. Id.

Dr. Schroder further testified that an early leak like Plaintiff's was further evidence Plaintiff was injured by Dr. Concepcion's failure to properly staple along the staple line or Dr. Concepcion's use of a harmonic scalpel.

Id.at 25-26.[3] Once the leak was identified, Dr. Schroder stated that the standard of care required Plaintiff to be returned to the operating room to drain the leak to prevent accumulation in the body. Id. at 26. Dr. Schroder explained that the tissue would be better suited for repair the closer in time it was to the leak formation to prevent acid from further damaging the tissue. Id.at 74.

Dr. Jeffrey Friedman posited that Dr. Concepcion's use of the harmonic scalpel on the staple line was not a breach of the standard of care. Tr. 7:44. Dr. Friedman testified that he used a harmonic scalpel "all the time" and that it is a "very reliable, dependable, consistent, versatile instrument." Id. at 43. Dr. Friedman stated he could not identify how or when Plaintiff experienced a leak and that any attempt to do so would be "disingenuous." Id.at 44. Dr. Friedman explained that an earlier clot or tissue manipulation frequently causes some bleeding. Id.at 109.

Dr. Friedman also offered an opinion on Dr. Concepcion's actions once Plaintiff began experiencing complications. He stated that Dr. Concepcion's decision to not return Plaintiff to the operating room on August 16, 2018, was not a breach of the standard of care. Id. at 45. Dr. Friedman supported this

---

[3] Dr. Schroder bolstered his explanation regarding the timing of the leak by explaining how the presence of barium fluid in the CT scan means Plaintiff had a leak at the time of her barium testing prior to discharge. Tr. 2:39.

- 6 -

opinion on the basis that Plaintiff's leak was limited to a "contained abscess." Id. at 45.[4] Dr. Friedman argued that the standard of care did not require repair because the tissue would be too damaged from the acid. Id. at 39. Dr. Concepcion described a potential repair attempt as being akin to operating on "wet toilet paper." Tr. 5:152.

Another dispute regarding Plaintiff's post-operative complications is whether Dr. Concepcion's conduct fell short of the standard of care when he discharged Plaintiff before draining her leak. Dr. Freidman testified that Plaintiff's leak was stable despite growing and fluid collection increasing because it was contained to the abscess. Tr. 7:36. Dr. Freidman explained that the presence of inflammatory stranding was the body "walling off" the abscess. Id.

Dr. Mitchell Whiteman disagreed with Dr. Freidman's opinion that the leak was contained. Specifically, Dr. Whiteman testified that inflammation "all over" Plaintiff's abdomen signaled at least a partially uncontained leak. Tr. 3:186. Similarly, Dr. Schroder testified that Plaintiff's leak was uncontained upon her discharge and it was not until days later the leak was contained. Tr 2:94-95. Dr. Schroder cited to Plaintiff's then existing reports of

_____

[4] Other portions of Dr. Friedman's testimony were subject to sustained objections as to what the standard of care would require as to a particular procedure. See Tr. 7:24.

extreme pain, shallow breathing patterns, septic response, and inflammation. Id. at 94.

Finally, the parties dispute whether Dr. Concepcion's continued conservative approach violated the standard of care. Dr. Freidman opined that it was appropriate for Dr. Concepcion to take a conservative approach and refer Plaintiff for continual drainage. Tr. 7:59. The opinion is moored to the avoidance of reintroducing Plaintiff to general aesthesia, surgery, and sepsis with little chance of success. Id. at 62.

Doctor Mujtaba Butt is one of Plaintiff's treating physicians and an interventional gastroenterologist. Dr. Butt began seeing Plaintiff in 2016 and paused seeing Plaintiff that same year until 2021. Tr. 1-55. When Dr. Butt saw Plaintiff in 2021 he reviewed her prior medical history, including her August 13, 2018 surgery at NHJ. He testified that Plaintiff experienced 5 remedial procedurals, including clips, stents, and stitching to remediate her surgical complications. Tr. 1:76-77.

As a result of the complications following Plaintiff's gastric sleeve procedure, Plaintiff also became a patient of Dr. Shariq Latiff for assistance with her post-operative pain starting in January 2019. Tr. 1:101. Plaintiff reports sharp, burning, shooting, and throbbing pain that is not well controlled. Id. It is particularly difficult at nighttime, and complicates Plaintiff's ability to perform daily activities.

Because the operative facts occurred in Florida, the FTCA claims are predicated on Florida tort law. See Brownback v. King, 592 U.S. 209, 210 (2021) "To prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed." Gooding v. Univ. Hosp. Bldg., Inc., 445 So. 2d 1015, 1018 (Fla. 1984).

The first claim of malpractice in this case is Dr. Concepcion's performance of Plaintiff's gastric sleeve surgery. Namely did Dr. Concepcion breach his duty of care to Plaintiff by 1) cutting stomach tissue with the endo-scissors and 2) by using the harmonic scalpel near the staple line to stop the arterial bleeding. On these points the Court found Dr. Schroder's testimony most persuasive. Dr. Freidman did not rebut the idea that stomach tissue would not be forced forward during stapling, and that the failure to double staple was not a proximate cause of Plaintiff's stomach tissue being severed.

While use of the harmonic scalpel may be appropriate in certain circumstances, its use to cauterize the perforation caused by the endo-scissors likely only masked the source of the leak. The most plausible scenario is that the leak worsened over the next two days as the area was subjected to more pressure. Use of the scalpel, as all experts agreed could damage tissue and Dr. Schroder's well-reasoned testimony is that the damage it can cause is

exactly why it should not be used to seal an area subject to being reopened and leaking.

Dr. Freidman testimony that use of the harmonic scalpel is safe does not alter the Court's conclusion. The immediate leak testing showed no signs of leakage, but that was likely owing to the recency of the seal and by the time the test using barium was performed, leaking was occurring—it was just not noticed by the radiologist. The weight of evidence is that Dr. Concepcion's use of the harmonic scalpel and failure to use double staples was a breach of the standard of care owed to Plaintiff and that breach caused Plaintiff significant and ongoing injuries.

The next claim of malpractice is that Plaintiff received inadequate treatment once Dr. Concepcion learned Plaintiff developed a leak. The evidence on this point is close. As to how contained the leak was and whether surgery was appropriate, the evidence is in equipoise. While the leak showed some initial evidence of worsening, by the time it was drained the leak had stabilized and was nearly identical in size from the time Plaintiff reported to the emergency room. Further, there is insufficient evidence that surgical repair would have been successful or otherwise prevented the injuries Plaintiff ultimately suffered.

Moreover, if the Courts accepts Dr. Schroder's testimony about the formation of the leak occurring at the time of surgery, his testimony would

also suggest any repair attempt would have likely been futile given the existence of the leak for at least 48 hours prior to the leak's identification. Dr. Concepcion and Dr. Friedman agree Plaintiff's tissue would have been compromised by the hydrochloric acid saturating the area near the abscess. Dr. Concepcion explained the risks additional surgery could pose and that the odds of success were minimal. Dr. Concepcion collaborated with Dr. Nieto, a gastroenterologist specializing in leak drainage and interventional techniques like stenting owing the likely damage to the tissue surrounding the leak. Tr. 5:145. The Court cannot find this tact violated the standard of care. Nor can the Court find Dr. Concepcion's conservative approach to Plaintiff's treatment to be a breach of the standard care.

Having found Dr. Concepcion's performance of the gastric sleeve surgery to constitute negligence, the Court is next left to determine an appropriate amount regarding damages. The sum to be awarded given the complications Plaintiff suffered is likely to be significant. The parties know the Court's conclusions regarding liability in this case and with that knowledge are in a position to come to an agreement as to the appropriate amount to compensate Plaintiffs for their injuries. The Court will provide a narrow window during which the parties will confer regarding the appropriate amount of damages to be awarded. If the parties are unable to

agree, the Court will determine the amount of damages from the evidence on record.

Accordingly, after due consideration, it is

**ORDERED:**

1.     In light of the Court's findings that Defendant is liable to Plaintiffs for negligence in the performance of the gastric sleeve surgery on Mary Reeley, the parties shall confer and file a notice as to whether they believe they can settle the issue of damages on or before **April 12, 2024**.

   a.     If the parties believe they can resolve the issue of damages, they shall provide the Court a proposed timeline and state whether a settlement conference with the Court would be helpful.

   b.     If the parties do not believe settlement discussions will be productive, the Court will enter forthwith its determination regarding damages from the evidence and briefing previously submitted.

2.     The Clerk of the Court is directed to administratively close this file and terminate any pending motions.

**DONE** and **ORDERED** in Jacksonville, Florida this 29ᵗʰ day of March, 2024.

BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record